# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| Nathan Hofstader, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Emergency Physician Services, P.S., Providence Holy Family Hospital and Providence Health and Services,<br><br>Defendants. | Case No:<br><br>**Class Action Complaint**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. Plaintiff Nathan Hofstader ("Plaintiff") brings this class action complaint against Emergency Physician Services, P.S. ("EPS"), Providence Holy Family Hospital ("PHF Hospital") and Providence Health and Services ("Providence H & S") (or jointly as "Defendants"), challenging their unfair, deceptive, and unlawful practice of subjecting Plaintiff and other similarly situated uninsured

1. and underinsured patients to collection efforts without first affirmatively screening them to determine their financial eligibility for free or discounted hospital care under Washington's Charity Care Act, RCW Ch. 70.170 ("Charity Care Act").

2. The classes in this case encompass Defendants' patients who were provided emergency care and (1) were uninsured and not covered by a governmental healthcare program or any other third-party payment source, or (2) were underinsured because any private insurance, governmental healthcare program or third-party source available to them was insufficient to cover the full cost of their care.

3. Plaintiff was underinsured when he went to Defendants' hospital and received emergency care for which he alleges he should have received free or discounted care under the Charity Care Act.

4. The Charity Care Act requires Defendant to grant free or discounted care to qualifying uninsured or underinsured patients upon determining their income is below 200% of the federal poverty level. This obligation to charity care continues after the hospital assigns a patient's account to collections, including after its collecting agency files suit to collect on the account. Under current guidelines, 200% of the federal poverty level for a family of four in Washington is an income of $48,600 per year.

5. The Charity Care Act requires Defendant to screen its patients at or near the time of service to determine whether they qualify for free or discounted care based on their income. This affirmative proactive screening to determine each patient's financial eligibility for charity care must occur *before* any collection efforts.

6. Plaintiff is informed and believes, and thereon alleges, that Defendants hasve engaged, and continue to engage, in a pattern and practice of collecting or

seeking to collect from patients without first affirmatively screening them to determine whether they qualify for charity care based on their income.

7. Representing uninsured and underinsured patients, Plaintiff brings his claims in this case on behalf of himself and similarly situated patients who 1) received emergency care medical treatment; 2) were uninsured or underinsured by insurance or any third-party source of payment at the time of treatment; and 3) were subject to collections even though Defendants' account records show no affirmative screening to determine Plaintiff's eligibility for charity care.

8. On behalf of both uninsured and underinsured patients who received emergency medical services from Defendants but did not receive the charity care to which they were entitled, this lawsuit seeks: 1) declaratory and injunctive relief to require Defendants to fully comply with the requirements of the Charity Care Act; 2) recovery of excess payments made by Plaintiff and class members for the proposed uninsured and underinsured classes when they were indigent; and 3) damages under the Washington Consumer Protection Act RCW 19.86 for Defendants' unfair and deceptive practices.

9. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain directly to a plaintiff, which Plaintiff alleges on his personal knowledge.

10. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

11. All the conduct engaged in by Defendants took place in the Eastern District of Washington.

12. Any violations by Defendants were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such specific violation.

## JURISDICTION AND VENUE

13. Jurisdiction of this Court arises pursuant to the Class Action Fairness Act 28 U.S.C. § 1332(d), 1453, and 1711-1715 ("CAFA"), 28 U.S.C. § 1331, and 28 U.S.C. § 1367 for supplemental state claims.

14. This action arises out of Defendants' violations of the Washington Charity Care Act and the Washington Consumer Protection Act RCW 19.86.

15. Because Defendants conduct business within the State of Washington, personal jurisdiction is established.

16. Venue is proper pursuant to 28 U.S.C. § 1391 because the events leading to the cause of action occurred in the City of Spokane, County of Spokane, State of Washington.

17. At all times relevant, Defendants conducted business within the State of Washington.

## PARTIES

18. Plaintiff is a natural person who resides in the City of Spokane, State of Washington.

19. Defendant EPS is a medical group that provides services at the PHF Hospital Emergency Center.

20. Defendant PHF Hospital is a hospital located in the city of Spokane, State of Washington.

21. Defendant Providence H & S is believed to be the parent corporation of PHF Hospital located in the City of Renton, in the State of Washington.

22. Defendant Providence H & S is the owner of multiple hospitals, care centers, health plans, physicians, clinics, home health care and affiliated services according to Providence H & S's website.

## GENERAL ALLEGATIONS

23. In 1989, the Washington legislature enacted the Charity Care Act and mandated the provision of charity care by all Washington hospitals. The

legislature concluded that this is essential to "moderate health care costs and promote access to health care services." RCW 70.170.010(2). It found that all hospitals must provide charity care in order to ensure access to health care for low-income residents. "Therefore, the legislature intends that charity care requirements and related enforcement provisions for hospitals be explicitly established." RCW 70.170.010(3).

24. Washington's Charity Care Act and its implementing regulations (collectively the "Act" or "Charity Care Act") require all Washington hospitals to provide charity care to indigent patients, who are defined as patients with incomes at or below 200% of the federal poverty level. *See* RCW 70.170.060(5) (charity care for full amount of charges for all patients at or below 100% of the federal poverty level); WAC 246-453-040(2) (partial charity care for patients at or below 200% of poverty level); WAC 246-453-010(4) (defining "indigent persons" as "patients who have exhausted any third party sources, including Medicare and Medicaid, and whose income is equal to or below 200% of the federal poverty standards").

25. The Charity Care Act specifically requires hospitals to affirmatively screen all patients at or near the time of admission to the hospital to determine whether they are indigent, and to conduct this affirmation screening *before* demanding payment for services. RCW 70.170.060(5), (6); WAC 246-453-020(1), (1)(a), (1)(b).

26. The Charity Care Act further prohibits hospital policies or practices which result in a significant reduction in the proportion of indigent patients served by the hospital. RCW 701.170.060(1).

27. These provisions require hospitals to affirmatively and proactively screen all patients at or near the time of admission to determine whether they qualify for free or discounted care based on their low income, and this initial determination "*shall* precede collection efforts directed to the patient." RCW

70.170.060(6) (emphasis added); see also WAC 246-453-020(1)(a) ("Collection efforts shall include any demand for payment or transmission of account documents or information which is not clearly identified as being intended solely for the purpose of transmitting information to the responsible party.").

28. This "initial determination of sponsorship status" that hospitals must make before initiating collection efforts is an affirmative screening to identify whether each patient "may meet the criteria for designation as an indigent person qualifying for charity care." WAC 246-453-010(19).

29. Under the Charity Care Act, when a hospital fails to affirmatively screen patients to conduct this required initial determination of eligibility for charity care based on income, the hospital is precluded from engaging in collection efforts directed to the patient. RCW 70.170.060(6); WAC 246-453-020(1)(a).

30. Statewide, approximately 14% of Washington residents have household income below 100% poverty level,[1] and over 31% are in households with income below 200% of the poverty level.[2] Based on the current state population of approximately 7.1 million people,[3] this means that approximately 994,000 state residents (14% times 7,100,000) live below 100% of poverty level and would qualify for free hospital care based on income, and another 1.2 million state residents (31% time 7,100,000 minus 994,000) have incomes between 100% and 200% of poverty level and would

---

[1] *See* http://www.washington.edu/news/2014/09/18/poverty-income-inequality-increase-in-washington-state/.

[2] *See* http://kff.org/other/state-indicator/population-up-to-200-fpl.

[3] *See* http://population2016.com/population-of-washington-in-2016.html.

qualify for discounted care based on their income under the Charity Care Act. *See* RCW 70.170.060(5); WAC 246-453-040(1) & (2).[4]

31. Because Medicaid expansion covers up to 138% of poverty level, over half a million adults in Washington who were previously uninsured became eligible for coverage under the Patient Protection and Affordable Care Act ("ACA"). As a result, the uninsured rate in in Washington has dropped from 14 percent of the state's population in 2013 to 7.3 percent today.[5]

## FACTUAL ALLEGATIONS

32. Plaintiff is informed and believes that contrary to Defendants' legal obligations to affirmatively screen patients for charity care before engaging in collection efforts, Defendants have engaged, and continue to engage, in a pattern and practice of collecting or seeking to collect from their patients without first affirmatively screening patients to determine whether patients qualify for charity care based on their income.

33. On or around November 21, 2015, Plaintiff received emergency services from EPS at PHF Hospital.

34. EPS completed an emergency evaluation on Plaintiff and eventually sent Plaintiff home.

35. On November 21, 2015, Defendants did *not* affirmatively screen Plaintiff for charity care.

36. Defendants charged Plaintiff $783.00 for this November 21, 2015 emergency hospital visit, for which Plaintiff could not afford.

37. Plaintiff was underinsured at the time of service on November 21, 2015.

38. On or about July 12, 2016, Plaintiff's account with Defendants was sent to a debt collector, Sentry Credit, Inc. ("Sentry")

---

[4] Under 2016 poverty guidelines, 100% and 200% of poverty level for a family of four are $24,300 and $48,600 per year. *See* https: //aspe.hhs.gov/poverty-guidelines.

[5] *See* https://www.insurance.wa.gov/about-oic/newsroom/news/2016/02-02-2016.html.

39. Sentry sent a collection letter to Plaintiff dated July 12, 2016 indicating that Plaintiff owed $783.52 to PHF Hospital.
40. Defendants did not determine Plaintiff's charity care eligibility before sending this account to Sentry for collection.
41. Defendants never contacted Plaintiff regarding his hospital bill before referring Plaintiff's account to Sentry.
42. On or about February 15, 2017, Sentry filed a lawsuit against Plaintiff for the outstanding alleged debt owed to Defendants.
43. The first time Plaintiff heard about this outstanding bill with Defendants was when he was served with the lawsuit brought by Sentry.
44. Plaintiff hired counsel to represent him in the lawsuit brought by Defendants.
45. Plaintiff attempted to contact Defendants multiple times after being sued to determine the status of his account.
46. On or about March 27, 2017, Plaintiff physically visited the PHF Hospital and Defendants finally screened him for charity care.
47. Not surprisingly, after the screening was completed, Defendants provided Plaintiff with 100% assistance for his services.
48. Eventually, Sentry dismissed the lawsuit against Plaintiff and notified Plaintiff's counsel one day before the hearing for Motion for Summary Judgment, which was set for July 28, 2017.
49. Plaintiff incurred attorney's fees and costs in litigating the case against Sentry due to Defendants' failure to affirmatively screen Plaintiff before his account was sent to collections.
50. If Defendants has affirmatively screened Plaintiff for charity care, it would have determined that his income was below 200% of the federal poverty level in 2015 and that based on his income, he was eligible for charity care under the Charity Care Act.

51. Because Plaintiff was underinsured and his income was less than 200% of the federal poverty level when he went to Defendants' emergency center in 2015, he qualified for and should have received charity care from Defendants under the Charity Care Act.

52. Through this conduct Defendants violated RCW 19.86.020 by not screening Plaintiff for charity care and sending Plaintiff's account directly to a debt collector.

53. As a result of Defendants' abusive conduct, Plaintiff suffered actual damages in the form of mental anguish and emotional distress, which was manifested by symptoms including but not limited to: stress, anxiety, worry, restlessness, irritability, embarrassment, loss of sleep, feelings of hopelessness, and helplessness all impacting his job and personal relationships.

## CLASS ALLEGATIONS

54. As a result Plaintiff brings this action on behalf of himself and all others similarly situated, as a member of the proposed class (hereafter "Class") defined as follows:

The Class

All individuals (or their guardians or representatives) who within the statute of limitations (a) received emergency care medical treatment from Defendants; (b) uninsured or underinsured by insurance or any other third-party source of payment at the time of treatment; and (c) were subject to collections even though Defendants' account records show no affirmative screening to determine the patient's eligibility for charity care.

55. Plaintiff represents, and is a member of, the Class, consisting of all persons within the United States who received emergency care medical treatment

from Defendants, was underinsured at the time of treatment, and was subject to collections even though Defendants' account records show no affirmative screening to determine Plaintiff's eligibility for charity care, within the the statute of limitations.

56. Defendants, its employees and agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the Class members number in the hundreds, if not more. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

57. The Class is so numerous that the individual joinder of all of its members is impractical. While the exact number and identities of the Class members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes and thereon alleges that the Class includes hundreds, if not thousands of members. Plaintiff alleges that the Class members may be ascertained by the records maintained by Defendants.

58. Common questions of fact and law exist as to all members of the Class, which predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which may be determined without reference to the individual circumstances of any Class members, include, but are not limited to, the following:

    a.    Whether the Charity Care Act requires Defendants to affirmatively screen all patients at or near the time of admission to determine whether they are indigent;

    b.    Whether under the Charity Care Act, Defendants are required to conduct this affirmative screening of all patients before demanding payment for services;

c. Whether Defendants have a pattern and practice of not affirmatively and proactively screening uninsured patients at or near the time of their admission to determine whether they are indigent;

d. Whether Defendants have a pattern and practice of demanding payment from uninsured and underinsured patients without first affirmatively screening them to determine whether they are indigent;

e. Whether Defendants pattern and practice of demanding payment from uninsured or underinsured patients without first affirmatively screening them to determine whether they are indigent is unfair and/or deceptive;

f. Whether Defendants' pattern and practice of demanding payment from uninsured and underinsured patients without first affirmatively screening them to determine whether they are indigent is unlawful under any of the causes of action asserted herein;

g. Whether Defendants have been unjustly enriched by these practices; and

h. Whether the foregoing acts and conduct of Defendants render them liable to Plaintiff and the class members for restitution declaratory, and injunctive relief, and/or damages.

59. As an underinsured person that received emergency care from Defendants and was not affirmatively screened to determine whether he was indigent, Plaintiff is asserting claims that are typical of the Class.

60. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained attorneys experienced in the prosecution of class actions.

61. A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Class members is impracticable. Even if every Class member could afford

individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same complex factual issues. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each Class member.

62. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

63. Defendants have acted or refused to act in respects generally applicable to the Class members, thereby making appropriate final and injunctive relief with regard to the members of the Class as a whole.

## CAUSES OF ACTION

### COUNT I

### DECLARATORY RELIEF

64. Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs.

65. Pursuant to the Declaratory Judgments Act, RCW Ch. 7.24, Plaintiff and class members are entitled to a declaration that under the Charity Care Act, Defendants are required to affirmatively screen all patients at or near the time of admission to determine whether they are indigent, and that it is required to conduct this affirmative screening before demanding payment for services.

## COUNT II

## VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT

## RCW 19.86

66. Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs.

67. Defendants' failure to comply with the Charity Care Act as set forth above violates the Washington Consumer Protection Act ("CPA"), RCW 19.86, as to Plaintiff and class members.

68. Specifically, by failing to comply with the Charity Care Act as set forth above, Defendants have engaged in, and continue to engage in, unfair and deceptive acts or practices in trade or commerce in violation of the CPA by failing to affirmatively screen patients for charity care and then immediately sending the outstanding bill to collections without contacting the patients.

69. Such conduct affects the public interest and has caused injury to the business or property of Plaintiff and class members.

70. Plaintiff suffered emotional damages because of this conduct by Defendants.

71. As a result of each and every violation of the Washington Consumer Protection Act, Plaintiff is entitled to any actual damages, costs, and attorneys fees pursuant to RCW 19.86.090.

72. Plaintiff is further requesting the court treble damages pursuant to RCW 19.86.090 due to the reprehensible nature of Defendants' conduct.

## COUNT III

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

73. Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs.

74. Defendants' conduct, as alleged above, also constitutes a breach of the covenant of good faith and fair dealing.

75. Plaintiff and class members entered into express or implied-in-fact contractual relationships with Defendants when they went to Defendants' emergency room for the purpose of receiving emergency medical care.
76. Implied into every contract is a covenant of good faith and fair dealing. This covenant of good faith and fair dealing requires that all parties will act reasonably and will not act so as to prevent performance by the other party.
77. Under Washington law, a statutory violation can constitute a breach of covenant of good faith and fair dealing.
78. Because the requirements of the Charity Care Act are likely incorporated into the contractual relationship between Defendants and its patients, Defendants' violations of the Charity Care Act can also constitute a breach of its covenant of good faith and fair dealing.
79. Defendants violated the Charity Care Act and thereby breached its covenant of good faith and fair dealing owed to Plaintiff and class members by failing to affirmatively screen them at or near the time of admission to determine whether they were indigent, and demanding payment for services without conducting the required affirmative screening, and thereby caused injury and consequential damages to Plaintiff and class members.

## COUNT IV
## UNJUST ENRICHMENT AND RESTITUTION

80. Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs.
81. Defendants' actions, as described above, are unconscionable and unlawful.
82. Defendants have received money which belongs to Plaintiff and class members which in equity and good conscience Defendants ought to pay to Plaintiff and class members, along with interest.

///

///

# COUNT V

## UNJUST ENRICHMENT AND RESTITUTION

83. Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs.

84. Plaintiff and class members are entitled to an injunction under the CPA, under the common law, and under any other applicable laws enjoining Defendants from continuing to engage in the conduct alleged herein.

85. In particular, Plaintiff and class members are entitled to an injunction under the CPA, under the common law, and under any other applicable laws to enjoin further violations fo the Charity Care Act and/or unfair or deceptive acts and practices related to Defendants' provision of charity care (or lack thereof) to indigent persons, including an injunctive order requiring Defendants to affirmatively screen all patients at or near the time of admission to determine whether they are indigent, and requiring that it conduct this affirmative screening before demanding payment from uninsured or underinsured patients.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the class members prays that judgment be entered against Defendants, and Plaintiff be awarded damages from Defendants, as follows:

Plaintiff respectfully requests the Court grant Plaintiff and Class members the following relief against Defendants:

- An order certifying the Class;
- An order certifying the undersigned counsel as Class Counsel;
- A declaratory judgment that Defendants' actions as discussed herein is unlawful;
- An order requiring Defendants, at their own cost, to notify all members of the Classes of the unlawful acts discussed herein;

1. ¥ Injunctive relief stopping Defendants from further failure to affirmatively screen patients for charity care;
2. ¥ Actual damages suffered by Plaintiff and each Class member, pursuant, against Defendants.
3. ¥ An award of any such amount as the Court may allow for all other class members in accordance with proof at trial, including treble damages under the CPA, against Defendants;
4. ¥ An award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2), against Defendants;
5. ¥ Award Plaintiff and class members their costs of suit, including expert fees, and reasonable attorney's fess as provided by the CPA and other applicable law; and
6. ¥ Any other relief the Court may deem just and proper..

86. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Respectfully submitted,

**Kazerouni Law Group**

Date: February 20, 2018
By: *s/ Ryan L. McBride*
Ryan L. McBride
Attorneys for Plaintiff

*s/Joshua B. Swigart*
Joshua B. Swigart, Esq. (SBN 49422)
josh@westcoastlitigation.com
**Hyde & Swigart**
2221 Camino Del Rio S., #101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

***s/Abbas Kazerounian***
Abbas Kazerounian (SBN 48522)
ak@kazlg.com
Ryan L. McBride (SBN 50751)
ryan@kazlg.com
**Kazerouni Law Group, APC**
1546 NW 56th Street
Seattle, WA 98107
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

***s/Boyd McFadden Mayo***
Boyd McFadden Mayo (SBN 43752)
mack@bmayolaw.com
**Kazerouni Law Group, APC**
220 West Main Ave.
Spokane, WA 99201
Telephone: (509) 381-5091

Attorneys for Plaintiff and the putative class